STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. HOWARD E. JEFFERSON, PLAINTIFF IN ERROR.

Argued October 20, 1943—Decided December 9, 1943.

For the plaintiff in error, *H. Norris Mangan.*

For the defendant in error, *John F. Bruther.*

The opinion of the court was delivered by

BODINE, J. The plaintiff in error has twice been convicted of murder in the first degree, the jury not recommending life imprisonment at either trial. *R. S.* 2:138–4. The first conviction was set aside because of trial error. *State* v. *Jefferson,* 129 *N. J. L.* 308.

Of the facts in the case little need be said. The victim of the murder was brutally killed. The defendant's fingerprints were upon her glasses. Competent medical proof showed that there had been at least an attempt to commit rape. The defendant signed a written confession.

The jurors were examined as to their competence before being sworn. *R. S.* 2:92–10. Argument is made that the court should have allowed a challenge for cause as to juror Jacob Riggins. Our statute (*R. S.* 2:138–4) provides: "Every person convicted of murder in the first degree, his aiders, abettors, counselors and procurers, shall suffer death unless the jury shall by its verdict, and as a part thereof, *upon and after the consideration of all the evidence,* recommend imprisonment at hard labor for life, in which case this and no greater punishment shall be imposed." The italics are mine.

Juror Riggins' pertinent testimony was as follows: "Q. Now, in the light of that statute, do you believe that everyone convicted of murder in the first degree, should suffer the death penalty? *A.* I do." After much discussion the exami-

nation resulted as follows: "*Q.* So there must be some mitigating circumstances brought out?—otherwise, if he were to be convicted of first degree murder, you would feel he should be given the death penalty, notwithstanding that you could, as a member of the jury, fix the penalty as life imprisonment? Isn't that the case? *A.* That's the case."

The testimony shows no malice or ill will upon the juror's part. He was not opposed to capital punishment—a ground for the state to challenge for cause. *State* v. *Juliano,* 103 *N. J. L.* 663; *State* v. *Favorito,* 115 *Id.* 197. A juror may have formed an opinion as to the guilt of the accused, but as long as he has a firm intention to be guided by the evidence adduced and the law, as charged by the court, and has displayed no malice or ill will to the accused, there is no reason whatever why he should not serve as a juror. There is nothing to show that the juror challenged did not stand indifferent between the state and the accused. *State* v. *Spencer,* 21 *Id.* 199; *Wilson* v. *State,* 60 *Id.* 171; *State* v. *Turco,* 99 *Id.* 96; *State* v. *Stephan,* 118 *Id.* 592.

It is argued that in arriving at the recommendation of life imprisonment the jury need not consider the evidence in the case. *State* v. *Martin,* 92 *N. J. L.* 436; *State* v. *Carrigan,* 93 *Id.* 268; *affirmed,* 94 *Id.* 566. That may have been so under the statute in existence when those cases were tried, *Pamph. L.* 1916, *p.* 576; but the legislature realizing that the decision in the Martin case was unfortunate, there being two strong dissenting opinions, amended the act (*Pamph. L.* 1919, *p.* 303), to the end that it provide as in the present revision and require that a recommendation shall be made after considering all the evidence.

A juror, who determined a question so important alike to the state and the accused without considering all the evidence adduced, would not be an impartial juror. Anything in State *v.* Martin to the contrary would be expressly overruled if it were necessary, but it need not be done since the legislature has most wisely changed the rule.

Juror Riggins did not serve because there was a peremptory challenge. The same argument is advanced as to Juror Chester Glaspey. The remarks of the trial judge as to the

jurors' duty while the jurors were impaneled were well within his discretion, in the light of the pertinent statutes which were not designed to abolish capital punishment but to enable the jurors, after considering all the evidence, to recommend life imprisonment in a proper case. Further, the remarks of the trial judge were not in any way challenged and in a well balanced charge he made clear the pertinent provision of the law.

It does not appear that counsel for the plaintiff in error, when the last juror was called, made any examination to show that his client might be prejudiced by any view that this juror might have as to the law of the case.

What has been said sufficiently covers the arguments made respecting error in impanelling the jurors, except in this respect that it is said that no colored talesmen were summoned. The plaintiff in error was one of that race. However, on the panel were a number of colored persons and the name of at least one was drawn from the box. There is nothing in the record to indicate that the panel was improperly drawn, or that the talesmen were improperly selected, or that there was any racial discrimination in the administration of law in Salem County.

It is argued that there was error in the admission of a statement made by the accused, since it was obtained by "placing him in fear of lynching, and then promising him protection therefrom if he made a statement." It is conceded that the sheriff, to whom the first oral statement was made, did nothing to put the accused in fear, but it is said that other officers did so. They deny the allegations. When the statement in evidence was made there is not a suggestion that the accused was in fear of a mob and made the statement to secure protection. There was no mob. The statement was made in an office at the court house in the presence of several witnesses.

Granting that there may have been an issue of fact as to whether the confession was voluntary, it is said that the judge "said nothing to indicate to the jury that they had the right to decide any disputed question of fact." But the judge did say in his charge that the weight to be given the statement

was a question for them and also the question as to whether "you shall believe it." Since he had admitted the confession it was evidence in the case for the jury to consider. They could weigh it and reject it, if they chose. *State* v. *Compo,* 108 *N. J. L.* 499. This was made clear to the jury.

. It is also said that the judge erred in saying, while determining the question of the admissibility of the confession, that the three officers in whose presence it was taken were "well known" to him and that "he believed them." The specific point is that the jury should have been informed of their right to settle disputed questions. Clearly, they were so informed of their duty in the premises. Counsel was satisfied since he imposed no objection and made no request about it. It is also urged that these remarks transcended the right of fair comment and constituted the use of evidence within the knowledge of the court but not introduced into evidence. This would seem to be a valid objection if it had been made but it was not. Even under *R. S.* 2:195–16 there is no ground for reversal. *State* v. *Dragone,* 99 *N. J. L.* 144.

Next, it is argued that the motion to direct a verdict of acquittal was erroneously denied.

The argument is made that the confession was erroneously admitted, and that, even though it was not, there was conflicting evidence "as to the manner in which it was obtained," and the court should have submitted the question of fact in dispute to the jury, and that, as to both theories, the evidence shows that death occurred "at a time long after the plaintiff in error was in custody."

It is not clear what the pertinency of the last statement is, but, even though pertinent, it was for the jury to say when death occurred. The court seems to have submitted the confession and the weight to attach to it to the jury in accordance with the law. *State* v. *Compo, supra.* Moreover, the manner of its submission was not challenged.

Next, it is argued that two jurors of the fourteen sworn were improperly excused. *R. S.* 2:91–A1–3. The third section of the statute provides that after the charge of the court, the clerk of the court shall draw the names of the twelve jurors who are actually to determine the issues. In

this case, however, before the jury had been charged the court directed the clerk of the court to draw twelve names of the fourteen remaining on the jury which was done. He then excused the two whose names were not drawn. It is argued that the elimination of the two jurors before the charge was error. The court could have, at any time, excused these jurors under section 2 of the statute. The direction of the statute was procedural and not mandatory. At all events, there was no harm to the accused. The court could have excused the two jurors before charging the jury. Certainly, there was no harm done in selecting those to serve by lot.

The next alleged error is that the court charged the jury: "The failure of the accused to testify raises a strong presumption that he could not truthfully deny the facts testified to." The plaintiff in error had merely testified as to whether or not his confession was voluntary. He never denied the commission of the offense for which he was charged, and in this state the court may comment upon the unwillingness to deny the particular charge. The argument for the plaintiff in error, suggesting that the issue was whether the confession was voluntary, overlooks the proof that he was at the scene of the crime and that his fingerprints were upon the woman's glasses. Certainly, when he failed to deny such facts and circumstances proved, it is eloquent that he could not do so.

Lastly, we come to the charge that the verdict was against the weight of the evidence. The medical testimony was convincing. Counsel overlooks the statutes which specify that attempts to commit rape in the commission of murder raise the crime to first degree.

The other points argued have been carefully considered and are without merit.

The judgment is affirmed.

*For affirmance*—CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, RAFFERTY, HAGUE, DILL, JJ. 11.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, COLIE, THOMPSON, JJ. 4.